IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22–cr-30056-SMY |
| | ) |
| | ) |
| JAMES A. BROWN, | ) |
| | ) |
| Defendant. | ) |

# ORDER

**YANDLE, District Judge:**

Defendant James A. Brown is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Doc. 1). He moves to suppress evidence recovered after what he contends was an illegal search and seizure by the Sauget Police Department (Doc. 19). The Government opposes the Motion (Doc. 24). The Court conducted an evidentiary hearing on the motion on November 8, 2022 (Doc. 30).

## Factual Background

The following are the Court's factual findings based on parties' briefs and the evidence presented during the hearing: Officer Aaron Morgan has been employed by the Village of Sauget Illinois Police Department for approximately two years. He is assigned to the patrol division and patrols the area of Sauget where several nightclubs and Route 3 Liquor are located.

Route 3 Liquor is a truck stop, convenience mart, and liquor store that is open 24 hours. The doors to store are locked every night at 11:00 p.m., but the store remains opens to customers via a purchase window. It shares a parking lot with 2 nightclubs, a strip club, and a cannabis dispensary. The Sauget Police Department considers this area to be a high crime area. Officer

Morgan typically spends his entire shift parked in his police vehicle surveilling the area for criminal activity. According to Officer Morgan, Route 3 Liquor is owned by the Village of Sauget.

On January 22, 2022, Officer Morgan began his shift at approximately 10:00 p.m. He drove his patrol car to a semi-truck parking lot approximately 100 yards to the north of Route 3 Liquor and parked with his car facing south towards the store. At approximately 2:00 a.m. on January 23, 2022, while sitting in his patrol car and looking through his personal binoculars, Officer Morgan observed Defendant James A. Brown at the Route 3 Liquor purchasing window.

Brown was facing the purchasing window, and Officer Morgan was observing him from behind. Officer Morgan noted that Brown had long braids and was wearing a light tan jacket and jeans. He testified as follows regarding his observation that Brown was carrying a firearm:[1]

> Q. And at that time did you observe that Mr. Brown was carrying a firearm?
>
> A. I did.
>
> Q. Were you looking through your binoculars at that time?
>
> A. I was.
>
> Q. Did you observe any details about what the gun looked like?
>
> A. So, the gun was being held underneath his armpit. And as I looked at his back, I could see the, the barrel. And then just below the barrel, I could see a tactical light that was attached to that weapon.
>
> Q. So, the gun was sort of tucked underneath his armpit?
>
> A. Yes.

(Doc. 30, at pp. 24-25).

Brown purchased an item from the window. Officer Morgan testified that the barrel of the gun was pointed back and away from the window the entire time Brown stood at the window –

---

[1] A photograph of the firearm is attached as Exhibit 1.

Brown never pointed the gun at the window. After seeing the gun, Officer Morgan contacted dispatch to let them know that there was an individual at the purchase window with a weapon (Doc. 30, pp. 28-29). It was his intention at that point to approach and detain Brown. *Id.*

Officer Morgan testified that while waiting for his backup to arrive, he saw Brown move the gun from his armpit and put it into his front pant pocket and observed that the weapon had an extended magazine. *Id*. at pp. 30-32. He was able to make these observations with Brown's back to him. *Id*.

Officers Hedgpeth, Phillips, Mundy, and Rose joined Officer Morgan arrived on the scene and took up a "tactical position" at the northeast corner of the store so Brown could not see them. Officer Morgan drove into the store's parking lot and parked at gas pump number 8. He exited his vehicle and all five officers approached Brown at the purchase window with their weapons drawn. Officer Rose instructed Brown to place his hands in the air and turn around, and Brown complied. Brown was handcuffed and the gun was retrieved from his front left pants pocket. The firearm was identified as a Taurus G3 9mm handgun bearing serial number ABL149361. It had an extended magazine and was loaded with 31 rounds of 9mm ammunition (30 in the magazine plus one in the chamber).

While the officers were taking Brown into custody, he called out to a woman sitting in the passenger seat of a nearby vehicle. This woman was later identified as his wife, Jazzmine Brown. Ms. Brown proceeded to walk towards the officers until they ordered her not to approach. The officers secured Brown in the back of a police patrol car. They then detained Ms. Brown and the other passenger in the nearby vehicle, Victor Driver.

After the three individuals were handcuffed and secured, Officer Morgan contacted dispatch and provided Brown's information. Brown was then taken to the Sauget Police

Department. Officer Morgan testified that he was notified that Brown has a previous felony conviction after returning to the Sauget Police Department.

On May 17, 2022, a federal grand jury returned an indictment charging Brown with one count of being a felon in possession of a firearm in violation of Title 18, U.S.C. § 922(g)(1) (Doc. 1).

## Discussion

Brown contends that the officers seized him without reasonable suspicion or probable cause; that the sole basis of the seizure was that Officer Morgan saw a Black man with a gun. The Government argues that: (1) it was entirely reasonable for Officer Morgan to believe that criminal activity was afoot when he and the other officers detained Brown; and (2) Officer Morgan had probable cause to believe Brown had violated the law at the time he took Brown into custody.

Because the Fourth Amendment protects against "unreasonable searches and seizures", police officers must generally have probable cause before making an arrest or conducting a search. *United States v. Jackson,* 300 F.3d 740, 745 (7th Cir. 2002). And an officer may not stop someone to investigate potential wrongdoing without reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Williams,* 731 F.3d 678, 683–84 (7th Cir. 2013). In examining whether reasonable suspicion existed to justify a stop, courts must consider "the totality of the circumstances" and determine whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Watson,* 900 F.3d 892, 894–95 (7th Cir. 2018). The Government bears the burden of establishing reasonable suspicion. *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013).

Logically, the Court's analysis begins with the officer's stated basis for suspicion. Here, Officer Morgan testified that he observed Brown walk up to the purchase window at the liquor store and make a purchase. From his vantage point and view of Brown's back, he saw the firearm in question being held underneath Brown's armpit. The barrel of the gun was pointed back and away and had a tactical light attached. Brown never pointed the gun at the window. After contacting dispatch, Officer Morgan saw Brown move the weapon from his armpit to his front pocket and noticed the extended magazine.

The Court does not find Officer Morgan's testimony regarding his justification for detaining Brown – observing him with a gun – credible. Officer Morgan was 100 yards away from Brown. And although he was using binoculars, all he could see was Brown's back. His testimony that from his vantage point, he was able to see the particular gun in question (including the attached tactical light) tucked under Brown's armpit; see Brown move the gun from his armpit to his front pant pocket; and see that the gun had an extended magazine, is simply dubious and cannot support the Government's claim of reasonable suspicion.

Further, the officers did not have probable cause to search or arrest Brown. Officer Morgan testified that ***after seeing the firearm, it was his intention to approach and detain Brown***. In other words, Officer Morgan decided to detain Brown merely because he had a firearm. Setting aside the Court's rejection of Officer Morgan's testimony regarding his observation of the firearm, in Illinois, the mere possession of a gun outside of the home no longer necessarily amounts to criminal conduct, and therefore, no longer provides probable cause for a search in every instance. *See People v. Jenkins*, 2021 IL App (1st) 200458, ¶ 42, 193 N.E.3d 722, 732, *appeal denied,* 187 N.E.3d 728 (Ill. 2022).

The Government points to the fact that Brown did not possess the requisite registration for the firearm and that he was a convicted felon. But these are facts the officers learned after Brown was already handcuffed, placed in the back of a police car, and driven to the Sauget Police Department. At the time the officers detained and arrested Brown, they lacked a particularized or objective basis for suspecting Brown had or was about to commit a crime, that he lacked proper registration, or that he was a convicted felon. As the Illinois appellate court recently noted:

> Under the current legal landscape, police cannot simply assume a person who possesses a firearm outside the home is involved in criminal activity. Likewise, they cannot use a firearm in partial view, such as a semi-exposed gun protruding from the pant pocket of a person on a public street, alone as probable cause to arrest an individual for illegal possession without first identifying whether the individual has the necessary licenses. We thus caution against an "arrest first, determine licensure later" method of police patrol.

*People v. Thomas,* 2019 IL App (1st) 170474, ¶ 40, 129 N.E.3d 584, 600, *as modified on denial of reh'g* (May 14, 2019). Probable cause to make an arrest must be based on facts and circumstances known at the time, not after-acquired information. At the time Officer Morgan decided to detain Brown, he had nothing more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. *See Terry*, 392 U.S. at 27.

Finally, the Government argues that Officer Morgan had reasonable suspicion and probable cause to detain Brown because Route 3 Liquor is in a high crime area, an armed robbery had occurred the previous September, another robbery had occurred four years before, and someone had been murdered there in 2015. But Brown's mere presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that he was or was about to commit a crime. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

**Conclusion**

For the foregoing reasons, the Court finds that search and seizure of Defendant Brown on January 23, 2022, violated his Fourth Amendment rights and were unconstitutional. Accordingly, Defendant's Motion to Suppress (Doc. 19) is **GRANTED**; all evidence discovered as a result of the unlawful search and seizure must be suppressed.

**IT IS SO ORDERED.**

**DATED: December 16, 2022**

**STACI M. YANDLE**
**United States District Judge**